IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KIMBERLY SPIEWAK,
      Plaintiff,

v.                                  Case No: 3:09cv250/LAC/MD

MICHAEL J. ASTRUE,
Commissioner of Social Security,
      Defendant.

_____

**REPORT AND RECOMMENDATION**

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Spiewak's application for disability insurance benefits AND Supplemental Security Income benefits under Titles II and XVI of the Act.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Ms. Spiewak filed applications for benefits claiming an onset of disability as of May 23, 2002. The applications were denied initially and on reconsideration, and Ms. Spiewak requested a hearing before an administrative law judge (ALJ). A hearing was held on September 23, 2008 at which Ms. Spiewak was represented by counsel and testified. A vocational expert also testified. The ALJ entered an unfavorable decision (tr.13-26) and Ms. Spiewak requested review by the Appeals Council without submitting additional evidence. The Appeals Council declined review (tr. 5-7). The Commissioner has therefore made a final decision, and the matter is subject to review in this court. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1262 (11th Cir. 2007); *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This timely appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that Ms. Spiewak had severe impairments of lumbar degenerative disc disease, GERD, hypertension, and obesity, but that she did not have an impairment or combination of impairments that met or equaled one of the impairments listed in 20 C. F. R. Part 404, Subpart P; that she had the residual functional capacity to perform light work with some postural and environmental limitations; that she could not perform her prior relevant work as cashier, kitchen helper and laborer/warehouse worker; that she had a high school education; that there were jobs in significant numbers in the national economy that she could perform; and that she was not under a disability as defined in the Act.

## STANDARD OF REVIEW

In Social Security appeals, this court must review de novo the legal principles upon which the Commissioner's decision is based. *Moore v. Barnhart*, 405 F.3d

1208, 1211 (11th Cir. 2005) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). There is no presumption that the Commissioner followed the appropriate legal standards in deciding a claim for benefits, or that the legal conclusions reached were valid. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002). Failure to either apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

The court must also determine whether the ALJ's decision is supported by substantial evidence. *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). Even if the proof preponderates against the Commissioner's decision, if supported by substantial evidence, it must be affirmed. *Ingram*, 496 F.3d at 1260; *Miles*, 84 F.3d at 1400. Substantial evidence is more than a scintilla but less than a preponderance, and encompasses such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Moore*, 405 F.3d at 1211 (citation omitted). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence. *Moore*, 405 F.3d at 1211 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Findings of fact of the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Ingram*, 496 F.3d at 1260.

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

**To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).**

**The social security regulations establish a five-step evaluation process to analyze claims for both SSI and disability insurance benefits. *See Moore*, 405 F.3d at 1211; 20 C.F.R. § 416.920 (2009) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2009) (five-step determination for DIB). A finding of disability or no disability at any step renders further evaluation unnecessary. See 20 C.F.R. § 416.920; 20 C.F.R. § 404.1520. The steps are:**

1. **Is the individual currently engaged in substantial gainful activity?**

2. **Does the individual have any severe physical or mental impairment that meets the duration requirement?**

3. **Does the individual have any severe impairments that meet or equal those listed in Appendix 1 to subpart P of 20 C.F.R. Part 404 and meet the duration requirement?**

4. **Considering the individual's residual functional capacity, can the individual perform past relevant work?**

5. **Can the individual perform other work given the individual's residual functional capacity, age, education and work experience?**

**(*Id*.)**

**These regulations place a very heavy burden on the claimant to demonstrate both a qualifying impairment or disability and an inability to perform past relevant work. *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir.1985)). If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Doughty v.***

*Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Allen v. Bowen,* 816 F.2d 600, 601 (11th Cir. 1987). If the Commissioner carries this burden, claimant must prove that she cannot perform the work suggested by the Commissioner. *Doughty,* 245 F.3d at 1278 n.2; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

### PLAINTIFF'S MEDICAL HISTORY

Ms. Spiewak suffered an injury to her back while working in May, 2002 (tr. 407, 578). Her treating physician for the next four years was Steven Hendrix, M.D., an orthopedic surgeon. Dr. Hendrix treated her conservatively throughout. He initially prescribed anti-inflammatory medications and physical therapy and recommended that she work in a sitting job (tr. 357). By February 2006 Ms. Spiewak was complaining of back pain and pain into her left leg. On physical examination she had normal strength and range of motion in the hips (tr. 349). A month later Dr. Hendrix referred Ms. Spiewak to a neurosurgeon after an MRI showed central disc protrusion at L4-5 and annular bulge at L5-S1 with herniation on the right (tr. 348).

While being treated by Dr. Hendrix, Ms. Spiewak was seen by Aaron Stein, M.D., a pain management specialist, between September 2002 and January 2006. Dr. Stein performed lumbar epidural steroid injections with some relief after each procedure (tr. 425-65). In 2003 Dr. Stein recommended that Ms. Spiewak try to do light work with no lifting or prolonged standing (tr. 477). In July 2003 Dr. Stein gave Ms. Spiewak a three percent disability rating for lumbago (tr. 440). In February, 2004 Dr. Stein told Ms. Spiewak's she was unlikely to improve further unless she had "significant weight loss." (Tr. 425). He did not think surgical intervention would help because of her excess weight (*id*.).[1]

Ms. Spiewak started seeing primary care physician Mary Salib, M.D. in September 2005, approximately six months before she stopped seeing Dr. Hendrix.

---

[1]Plaintiff's weight is not noted in this portion of the record. In 2006, however, the record reflects that she was 5'6" tall and weighed 286 lbs. (tr. 155).

*Case No: 3:09cv250/LAC/MD*

She continued treatment with Dr. Salib on a monthly basis through August 2008 (tr. 229-323, 486-532). Many of her visits were for routine medical problems but she often complained of back pain. Dr. Salib noted tenderness in the back during eighteen visits (tr. 232, 246, 248, 255, 258, 260, 261, 264, 266, 267, 289, 272, 276, 279, 291, 294, 298, 305) and a normal back in nine visits during the same time (tr. 299, 234, 241, 244, 250, 251, 274, 286, 301). However, on each visit, whether back tenderness was noted or not, Ms. Spiewak's neurological examination was entirely normal: sensation, strength, and cranial nerves were intact. There was no tenderness in any extremity except for a single mention of possible tendinitis in the right hand (tr. 234), two instances of knee pain (tr. 255, 286), three instances of left ankle pain after a sprain (tr. 258, 260, 261), and two instances of leg pain (tr. 276, 291). Not once was there any mention of loss of range of motion, positive straight leg raising, or any other positive sign of a physical limitation.

      Dr. Salib filled out a form on October 10, 2006 in which she noted that Ms. Spiewak's motor strength was normal with only slightly diminished left grip strength, that she could do fine manipulation, that her gait was within normal limits, that she could heel and toe walk, squat with some support, and did not need an assistive device for walking (tr. 253). Three months later Dr. Salib filled out a form in which she opined that Ms. Spiewak could walk for less than one hour, stand for one to two hours, could sit for two to four hours, could lift up to ten pounds frequently, that her kneeling was impaired, that she would have to rest for 15 minutes every two hours, and that she was disabled from full-time employment (tr. 239-40).

      Ms. Spiewak started seeing Robert Sackheim, M.D. for pain management in August, 2006. She was prescribed hydrocodone (Lortab) and physical therapy with some improvement (tr. 198, 201). An April 2007 nerve conduction study suggested possible peripheral neuropathy in the right leg (tr. 559). A May 2008 repeat MRI showed mild bulging at L4-5 and disc protrusion at L5-S1 with potential effects on

the nerve roots (tr. 558). Dr. Sackheim ran two routine drug screens which were negative for hydrocodone even though Ms. Spiewak told Dr. Sackheim she was taking it as prescribed (tr. 535-6, 553-55). Dr. Sackheim therefore terminated the Lortab prescription and terminated Ms. Spiewak as a patient "[d]ue to [her] disregard concerning controlled medications" which was "a breech (sic) of the narcotic contract" between them (tr. 534).

Ms. Spiewak was examined by Marta Jacenyik, M.D. at the request of the state Division of Disability Determinations on October 12, 2006. She gave a history of low back pain. On examination Dr. Jacenyik found normal movement and strength except for reported low back and left leg pain with positive straight leg raising seated and complaints of pain heel and toe walking (tr. 154-58).

## DISCUSSION

Ms. Spiewak argues that the ALJ erred in failing to give the opinion of her treating physician appropriate weight, and that she was disabled from her onset date. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that Ms. Spiewak was not disabled, in light of her physical condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

Ms. Spiewak contends that the ALJ should have given more weight to Dr. Salib's opinion. Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). "Good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was

conclusory or inconsistent with the doctor's own medical records. *Phillips,* 357 F.3d at 1241; see also *Lewis*, 125 F.3d at 1440 (citing cases).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical impairments at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. 404.1527(d).

The opinion of a non-examining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician, whose opinion generally carries greater weight. *See* 20 C. F. R. § 404.1527(d)(1); *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985); *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1255 (M.D.Fla. 2005). However, a brief and conclusory statement that is not supported by medical findings, even if made by a treating physician, is not persuasive evidence of disability. *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987); *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 352 F.3d at 1241. Failure to do so is

reversible error. *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986));[2] *see also Nyberg v. Commissioner of Social Security*, 179 Fed.Appx. 589, 591 (11th Cir. 2006) (Table, text in WESTLAW)(also citing *MacGregor*).

Moreover, where, as here, a claimant's limitations are based largely on her own subjective complaints there is always a need for a credibility determination. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[3] People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain. This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." *Hand, supra,* at 1548-49. It is within the ALJ's "realm of judging" to determine that "the quantum of pain [a claimant] allege[s] [is] not credible when considered in the light of other evidence." *Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984). Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that. The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief, is the basis for the ALJ's credibility determination.

---

[2]*MacGregor* further held that "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." 786 F.2d at 1053.

[3]Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

*Case No: 3:09cv250/LAC/MD*

Here the ALJ found that Ms. Spiewak's subjective complaints of pain were not entirely credible. Her allegation of constant, severe pain was belied by Dr. Sackheim's discovery that she was not taking her hydrocodone. Also, at one point she told Dr. Sackheim she was taking less hydrocodone then prescribed because it made her drowsy, while at the same time she was not working and claimed she had trouble sleeping. MRI's showed mild to moderate degenerative disc disease, but no physical examination, including those done by Dr. Salib, disclosed significant physical limitations. Indeed, the form Dr. Salib filled out at the request of Ms. Spiewak's counsel was almost totally at odds with the form she had filled out only three months earlier, and was equally at odds with her own clinical records, where very few positive findings were ever noted. In short, Ms. Spiewak told Dr. Salib that her back hurt, but little in Dr. Salib's records confirmed the pain. It was completely within the ALJ's realm of judging to find that Ms. Spiewak was not credible, and that Dr. Salib's opinion was based on less than truthful complaints by her patient.

Finally, the ALJ noted that Ms. Spiewak washed dishes, did laundry, took care of her seven year old child, attended meetings, went on fishing trips, and once asked Dr. Sackheim if she could go roller skating (tr. 25, 541, 570, 585-87). There was substantial record evidence to support the decision of the ALJ, and Ms. Spiewak is not entitled to reversal.

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.

At Pensacola, Florida this 2nd day of June, 2010.

/s/ *Miles Davis*
**MILES DAVIS
UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636;** *United States v. Roberts,* **858 F.2d 698, 701 (11th Cir. 1988).**